IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APRIL WAGNER,<br>    **Plaintiff,**<br><br>   v.<br><br>PFIZER, INC.,<br>    **Defendant.** | CIVIL ACTION<br><br><br><br>NO.  22-4232 |

**HODGE, J.**                                          June 27, 2025

**MEMORANDUM**

Plaintiff April Wagner brings claims against her former employer, Defendant Pfizer, Inc. ("Pfizer") for breach of contract and violations of Pennsylvania and Delaware wage laws. Wagner was involuntarily terminated during a corporate restructuring in 2021, and claims that she was not paid the full bonus amount she was owed pursuant to her employment contract and termination agreement. Pfizer now moves for summary judgment on all of Wagner's claims. For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

**I.  BACKGROUND**

**A. Pfizer Global Performance Plan**

Defendant Pfizer is a global pharmaceutical company specializing in the development of medicine and vaccines. (ECF No. 24-2 ¶ 4.)[1] Pfizer offers eligible employees "an annual short-term incentive (bonus) program," entitled the Global Performance Plan ("GPP"), to reward high-performing employees. (*Id.* ¶ 5.) Eligibility for GPP participation is established by "business unit, division, function and/or local market practice and is typically based on [the participant's] job responsibilities, Global Job Level and/or position grade." (*Id.* ¶ 6.) Employees are assigned a

---

[1] The Court adopts the paginations supplied by the CM/ECF docketing system.

"incentive target percentage"—the target amount of their salary they may earn as a bonus in a given year. (*Id.*) The target percentage is dictated by the employee's salary grade, and cannot be negotiated. (ECF No. 24-2 ¶ 7.) The salary grade and incentive target percentage are included in an eligible participant's offer letter upon hire. (*Id.* ¶ 10.) Each participating employee is also given a "target incentive award," (ECF No. 24-2 ¶ 8.) The target incentive award is calculated based, in part, on the target percentage. (*Id.*) For example, a participant with a salary of $100,000 and a target percentage of 20% would have a target incentive award of $20,000. (*Id.* ¶ 9.)

### B. Plaintiff's Employment with and Termination from Pfizer

Plaintiff April Wagner was offered a job as Director Procurement BT Services at Pfizer's Collegeville, Pennsylvania location on or about October 28, 2011. (ECF No. 24-2 ¶ 11.) Plaintiff received an Offer Letter on October 28, 2011, offering her a $140,000 annual salary. (*Id.* ¶¶ 12-13.) Plaintiff negotiated the terms of her employment and received an updated letter dated November 15, 2011[2], reflecting a salary of $143,000. (*Id.* ¶ 14.) With respect to the GPP, the November 15, 2011 Offer Letter stated that Plaintiff was eligible to participate in the GPP, and that her target incentive was 20%. (ECF No. 24-2 at 29; 146.) The letter also stated:

> Your GPP bonus for 2011, payable March 2012, pending Pfizer Executive Leadership Team approval, will be based on factors such as your base salary, target incentive, Pfizer's performance, your business segment's performance, and your individual performance as assessed by your manager. Your annual bonus payout may vary from 0-200% of target based on business performance and your individual performance, subject to the overall bonus pool funding based on Pfizer Inc. performance. The payout will be prorated to reflect your actual months of Plan participation.

(*Id.*)

Wagner testified that she received a bonus each year she was employed by Defendant, and that her annual bonus was never below 20% of her target incentive. (ECF No. 25 ¶¶ 5-6 (citing

---

[2] Defendant's Statement of Undisputed Facts states that the November letter is dated November 15, 2021. (ECF No. 24-2 ¶ 14.) The letter is in fact dated November 15, 2011, just days after her initial offer of employment. (*Id.* at 146.)

ECF No. 24-2 at 98:15-99:5).) There was no year in which Plaintiff received a bonus of 200% of her target incentive. (ECF No. 24-2 at 99:6-9.)

In July 2021, Plaintiff was notified that she was going to be separated from her employment with Pfizer. (ECF No. 24-2 ¶ 17.) On October 22, 2021, Plaintiff was given a Release Agreement laying out the terms of her termination. (*Id.* ¶ 18.) She executed and returned the release to Defendant on December 20, 2021. (*Id.*) The Release stated: "Notwithstanding the foregoing, if I currently participate in a bonus plan, I will receive a pro-rated bonus for the current performance period and a bonus for the prior performance period if not yet paid, subject to and consistent with the terms of that plan." (*Id.* ¶ 19 (citing ECF No. 24-2 at 151).) The Release also stated that it would be "governed by and construed and enforced in accordance with the laws of the State of Delaware." (ECF No. 24-2 at 155.)

In addition to the Release, Plaintiff was provided a Personalized Statement outlining her severance pay and "other payments [she] may be eligible to receive." (ECF No. 24-2 at 158.) The Personalized Statement included a section entitled "Global Performance Plan," which stated: "You may be eligible to receive a prorated bonus award for the current year under the Pfizer Global Performance Plan (GPP) based on the rules applicable in the year of your termination." (ECF No. 24-2 at 159.) Plaintiff's last working day was October 22, 2021, but she continued to be paid until her date of termination on December 20, 2021. (*Id.* ¶¶ 24-26.) Her salary as of her termination date was $174,670, and her GPP incentive target percentage was 20%. (*Id.* ¶ 27-28.) During her employment with Pfizer, Plaintiff only ever worked in Pennsylvania. (*Id.* ¶ 29.)

### A. GPP Documents

Several documents are at issue in this lawsuit: the Offer Letter, Release Agreement, GPP Guide, and the GPP itself.

Plaintiff's Offer Letter stated that she was eligible to participate in the Global Performance Plan, and had a target incentive of 20%. (ECF No. 24-2 at 29) The Offer Letter further stated that her "annual bonus payout may vary from 0-200% of target based on business performance and your individual performance, subject to the overall bonus pool funding based on Pfizer Inc performance," and that her payout would be prorated to reflect the actual months of GPP participation. (*Id.*)

The Release Agreement stated in relevant part: "If I currently participate in a bonus plan, I will receive a pro-rated bonus for the current performance period and a bonus for the prior performance period if not yet paid, subject to and consistent with the terms of that plan." (ECF No. 24-2 at 34.)

Pfizer employees also had access to a "Global Performance Plan (GPP) Guide" (hereinafter "GPP Guide"), available to employees via Pfizer's internal network. (ECF No. 24-2 at 129, 10:14-22.) The Guide is a 15-page summary explaining to employees the provisions of the Global Performance Plan bonus program. The first page of the GPP Guide states, "This guide is designed to help employees better understand how GPP works and how individual performance, Pfizer's performance, and the performance of business units, divisions or functions are linked to the employee's annual short-term incentive opportunity and award." (ECF No. 24-2 at 29.) The page goes on: "This guide is a summary of the terms of the Plan. In the event of a conflict between the terms of this guide and the Plan document, the terms of the Plan document will prevail." (*Id.*)

The last relevant document is the Global Performance Plan document itself (hereinafter "the Plan Document"). The Plan Document is the formal legal document articulating all provisions of the GPP, including relevant definitions, who is eligible, how bonuses are calculated, and the law governing the GPP. (*See* ECF No. 24-2 at 64-72.) Plaintiff maintains that she never was

provided or saw the Plan document, an assertion Defendant does not dispute. (*See* ECF No. 25-1 at 4.) Among its relevant provisions, the Plan Document states that "[t]he Company reserves the right in its sole and absolute discretion to amend or terminate the Plan, at any time. . . . This right includes, but is not limited to, eligibility for an Award, determination of Incentive Pool funding, the modification of incentive measures, performance targets and/or performance results." (ECF No. 24-2 at 69.)

The Plan Document also lays out how an eligible GPP participant will be paid out in the event of involuntary termination., "If a Participant's employment is terminated as the result of an Involuntary Termination, prior to the end of the Performance Period, his or her Target Incentive Award will be prorated . . . in the Company's discretion. . . . If eligible, the prorated Target Incentive Award will be the lesser of the Participant's (i) prorated Target Incentive Award or (ii) prorated Target Incentive Award based on the performance of the Company, the Participant's business unit, division or function and the Participant's individual performance." (*Id.* at 68, § 7(b).)

**B. Plaintiff's 2021 GPP Bonus Payout and Subsequent Dispute**

On January 31, 2022, following Plaintiff's termination, she received a payment of $34,639, which was a GPP bonus for the 2021 year. (ECF No. 24-2 ¶ 30.) Plaintiff was eligible for the 2021 GPP from January 1, 2021 to December 20, 2021, the effective date of her termination. (*Id.* ¶ 31.) According to Pfizer, the $34,639 payment was based on Plaintiff's 20% target incentive award, prorated to reflect the number of calendar days in 2021 during which Plaintiff was eligible under the GPP. (*Id.* ¶ 32.)

Plaintiff Wagner disagreed with the amount she received as a 2021 GPP bonus and believed she was entitled to a larger bonus. (ECF No. 24-2 ¶ 33.) Plaintiff reached out to Fidelity Service Center, as well as to Steven Newman, her former manager at Pfizer. (*Id.* ¶¶ 34-35.) Newman

directed Plaintiff to Emily Keyloun, the Pfizer Human Resources Lead. (*Id.* ¶ 35.) On May 3, 2022, Plaintiff emailed Keyloun and asserted that she had "not been fully compensated for my bonus that was earned during the year of 2021. I have learned that the Pfizer bonus for work performed during the 2020-2021 year was paid out at a rate of 200%." (ECF No 24-2 ¶ 36 (citing ECF No. 24-2 at 171).) She went on to say that although she expected her bonus to be prorated based on the date of her termination, "[t]he bonus paid out at 200% which means I am still owed $35,152.34." (*Id.*) Plaintiff's email further explained that:

> I understand the bonus is based on my performance, as well as company performance. Prior to my termination, I not only achieved all of my pre-set MBO goals, but I far exceeded them. The company also, has far exceeded its goal in the market. For both these reasons the bonus paid out the additional percentage, which it has done year over year, setting precedence for the additional amount, for the last 12 years of my employment. This compensation is not only expected but relied upon.

(*Id.*)

Keyloun responded via email on May 4, 2022, saying,

> "As your employment was involuntarily terminated due to job restructuring prior to the end of the calendar year, your incentive award was pro-rated based on your actual days of GPP eligibility, and your incentive **target** percentage during the calendar year. The proration factor is the number of days in the calendar year up to your termination date divided by 365/366 days."

(ECF No. 24-2 ¶ 37 (citing ECF No. 24-2 at 173-4) (emphasis in original).) According to Pfizer, Plaintiff's GPP bonus was based only on her incentive target percentage, not on the company's or Plaintiff's own performance. (*Id.*)

On May 6, 2022, Plaintiff expressed again to Keyloun that it was her understanding that she was entitled to 200% of her incentive target award. (ECF No. 24-2 ¶ 38.) "For the year in which my bonus was earned, Pfizer bonus pay-out was 200% of target. I did not receive 200% of target, even though I achieved all of my MBO's prior to my involuntary separation and the company has outperformed expectations given the vaccine roll-out. I have only received the (pro-

6

rated) minimum target of 20%." (*Id.* (citing ECF No. 24-2 at 173).) In the same email, Plaintiff also suggested that Pfizer was violating Pennsylvania law by refusing to pay the 200% bonus. (ECF No. 24-2 at 173.) Keyloun again responded that "colleagues who are involuntarily terminated due to job restructuring prior to the end of the calendar year receive pro-rated GPP based on their incentive target percentage." (*Id.* ¶ 40.)

Plaintiff then spoke with Sheryl Colyer, Pfizer's Global Experience Lead for Global Business Services. (ECF No 24-2 ¶ 41.) On May 31, 2022, Plaintiff sent a letter to Payal Sahni Becher, Pfizer's Executive VP/Chief People Experience Officer, again stating that she believed she was entitled to 200% of her incentive target award. (*Id.* ¶ 42.)

On September 22, 2022, Plaintiff Wagner filed suit against Pfizer in the Montgomery County Court of Common Pleas. (*See generally* ECF No. 1-1.) Wagner claims that she is entitled to 200% of the target incentive award, and owed an additional $35,152.34, as well as equitable relief under state law. (*Id.* ¶ 20,34.) She asserts claims of Breach of Contract under Pennsylvania law, violation of the Pennsylvania Wage Payment Collection Law, Breach of Contract under Delaware law, and violation of the Delaware Wage Payment and Collection Act. (*Id.* ¶¶ 35-68.) Defendant Pfizer now moves for summary judgment on all claims. (*See generally* ECF No. 24.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is genuine if the evidence presented is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a summary judgment motion, a court "must

view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (internal citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co*., 534 F.2d 566, 573 (3d Cir. 1976)). Therefore, if after making all reasonable inferences in favor of the non-moving party, the court determines there is no genuine dispute as to any material fact, then summary judgment is appropriate. *Wisniewski v. Johns-Manville Corp*., 812 F.2d 81, 83 (3d Cir. 1987).

### III.   ANALYSIS

Defendant argues that Plaintiff's claims fail for three reasons: 1) Plaintiff had no contractual right to a bonus payout at a certain percentage of her inventive target; 2) payment of the bonus was governed by the GPP, which makes clear that if a Pfizer employee is involuntarily terminated prior to the end of the calendar year, her prorated bonus will be the lesser of i) the prorated target incentive award or, ii) the prorated target incentive award based on the performance of the Company, the participant's business unit, division, or function and the participant's individual performance; and 3) Plaintiff was paid her prorated target incentive award consistent with the GPP. (ECF No. 24-1 at 8-9.)

### A. Breach of Contract Claims

Plaintiff brings breach of contract claims under both Pennsylvania and Delaware law. (ECF No. 1-1.)[3] She alleges that Defendant "agreed to pay Plaintiff her GPP annual bonus in accordance with the terms of the plan . . .[however] Defendant has failed to pay Plaintiff her GPP annual bonus in full . . .therefore Defendant still owes Plaintiff $35,152.34." (ECF No. 1-1 ¶ 36-37.) Defendant avers that Plaintiff's claims fail because neither her Offer Letter nor the Release Agreement include any contractual provision that would require a 200% GPP bonus payment for 2021. (ECF No. 24-1 at 11.)

### i. The Offer Letter

Defendant argues this language of the Offer Letter is unambiguous—it provides only that Plaintiff is "eligible" for the bonus, and that her annual bonus may vary from 0 to 200% of her target percentage of 20% of her salary. (ECF No. 24-1 at 15.) Defendant also points to testimony from Plaintiff showing that she understood that the Offer Letter's language means that she could be paid anywhere from zero to 200 percent of her 20% target. (ECF No. 24-1 at 15-16 (citing 24-2 at 82, 32:10-33:8.) Based on the plain language of the Offer Letter and Plaintiff's deposition testimony regarding that language, Defendant maintains that Plaintiff has failed to demonstrate that Pfizer had a contractual obligation to pay her 200% of the target incentive award.

---

[3] Because the elements for a breach of contract claim are the same in both states, the Court will analyze these claims together. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) *("*A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages."); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) ("[T]he plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."). *See also Robertshaw v. Pudles*, No. CIV.A. 11-7353, 2013 WL 3976284, at *16 (E.D. Pa. Aug. 5, 2013) (finding no conflict between Pennsylvania and Delaware law since the elements of a breach of contract are substantially the same).

Defendant further asserts that it has not breached any term of the Offer Letter, because Pfizer paid Plaintiff a bonus consistent with the terms of the GPP. (ECF No. 24-1 at 17.) Defendant notes that Plaintiff's Offer Letter referenced the GPP, and must be read in conjunction with "any accompanying or referenced documents." (ECF No. 24-1 at 17.) The GPP, according to Defendants, is a separate document which sets forth the specific provisions of the bonus plan. (*Id.* at 18 (citing Exhibit 4, ECF No. 24-2 at 64-72).) The GPP provides that "any GPP award is 'variable compensation' and, therefore, 'not guaranteed' and that the receipt of a GPP award in one year does not guarantee any future award." (ECF No. 24-1 at 18 (citing ECF No. 24-2 at 70, § 12(a)-(b).) The GPP also states that Pfizer reserves the right to amend or terminate the Plan at any time, including eligibility for an award and modification of incentive measures. (*See id.* at 69, § 8 ("The Company reserves the right in its sole and absolute discretion to amend or terminate the Plan.").) Pfizer maintains that the language of the GPP does not obligate it to provide Plaintiff any particular amount of compensation, thus, there is no breach of the Offer Letter. (ECF No. 24-1 at 19.)

      **ii.**      **The Release**

With respect to the Release Agreement, Defendant argues that it too provides that any bonus payment will be consistent with the terms of the GPP. (ECF No. 24-1 at 22 (citing ECF No. 24-2 at 34, "subject to and consistent with the terms of th[e] Plan.").) Defendant again argues that Plaintiff has failed to identify a contractual obligation that entitles her to her requested relief: a 200% GPP payout for 2021. (*Id.*) Defendant also points to Plaintiff's testimony acknowledging that the language in the Release Agreement did not state that she would receive a 200% bonus. (*Id.* at 23.)

### iii. Plaintiff's Response

Plaintiff first responds with an argument as to whether the Offer Letter and Release Agreement constitute contracts, asserting that the Offer Letter is a contract, and that pursuant to the Offer Letter there is no dispute as to whether Wagner was eligible for a bonus, only the bonus amount Pfizer was required to pay her. (ECF No. 25-1 at 6-9.) Although Plaintiff presents this as a point of disagreement between the parties, the Court understands Defendant to be making the exact same point in its Motion for Summary Judgment. Defendant does not dispute that the Offer Letter is a contract or that the Offer Letter states that Plaintiff is entitled to a bonus (*see* ECF No. 24-1 at 15 ("[T]he Offer Letter unambiguously provides only that Plaintiff is 'eligible' to participate in the GPP.").) Nor does Defendant cite *Beckwith* for the proposition that the Offer Letter is not a contract. (*Id.* at 16.) As the Court understands it, Defendant is arguing that the Offer Letter does not create an obligation for Pfizer to pay Plaintiff a specific bonus amount. (*Id.* at 17.) Therefore—the parties are in agreement that the issue is what, if any, bonus amount Plaintiff was owed under the contracts.

Plaintiff also argues that the Offer Letter and Release are ambiguous as to what bonus she is owed; therefore, she argues the parties must look to extrinsic evidence to determine the meaning of these contracts. (ECF No. 25-1 at 8-9.) However, according to Plaintiff, the parties disagree about what extrinsic evidence needs to be examined. (*Id.* at 9.) Plaintiff asserts that the Offer Letter and Release Agreement do not define, incorporate by reference, or otherwise point to the GPP. (ECF No. 25-1 at 8-9.) Plaintiff goes on to suggest that there is a dispute of material facts related to whether the GPP[4] is the document that governed her 2021 bonus payout. (*Id.* at 9.) She points to several "disputes and ambiguities" related to the GPP, including the fact Pfizer amended its

---

[4] In her brief, Plaintiff refers to the GPP as "Exhibit 4." (*See, e.g.*, ECF No. 25-1 at 11.)

11

bonus cap to 250% of the target incentive, but the document produced lists 200% as the cap; testimony from Emily Keyloun referring to the GPP bonus guide as the document available to employees; and that Pfizer has allegedly pointed to the GPP bonus guide as the governing document. (*Id.* at 11-12.)

In addition, Plaintiff argues that even if the GPP (Exhibit 4) was the document that governed her 2021 bonus, Defendant did not follow the GPP, because it did not consider her individual performance in determining her award, and thus breached the contracts. (ECF No. 25-1 at 12.) According to Wagner, if Pfizer had properly considered her performance, she would have received at least 200%, and perhaps even 250% of her target, because she performed "above and beyond" in 2021. (*Id.* at 13.)

        **iv.    Plaintiff's Breach of Contract Claim Fails**

In order to establish a breach of contract claim under both Delaware and Pennsylvania law, a party must prove 1) the existence of a contract, 2) a breach of an obligation imposed by the contract, and 3) resultant damages. *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Defendant argues that the Offer Letter does not create the obligation that Plaintiff claims it does—that she is contractually entitled to 200% of her target percentage for 2021. This Court agrees that Plaintiff has identified no support for her repeated claim that Pfizer was contractually obligated to pay her a bonus of 200% of her target incentive.

Plaintiff's breach of contract claims fail at every turn. First, the plain language of the Offer Letter and the Release Agreement are unambiguous with respect to Plaintiff's bonus payout. Both are clear that Plaintiff was eligible to participate in the GPP bonus program, that her target incentive bonus was 20% of her salary, and that the bonus, while based on factors including individual and company performance, could vary from zero to 200% of target. (ECF No. 24-2 at

29; *id.* at 34.) Plaintiff testified that she understood that her bonus could fall anywhere within this range. (ECF No. 24-2 at 82, 32:10-33:8.)) She also testified that she had never earned 200% of her target incentive during her employment at Pfizer. (ECF No. 24-2 at 99, 99:6-9.) Plaintiff was paid a 20% bonus—an amount consistent with the plain language of the Offer Letter and Release. Plaintiff provides no support for her claim that she was contractually owed 200% (or 250%) of her target incentive in 2021, as opposed to the zero-200% range articulated in the Offer Letter. She has made the claim that "bonuses were paid out at 200%." (ECF No. 1-1 ¶ 47) However, when asked in her deposition, Plaintiff was unable to identify any specific person who told her that they were paid 200%. (ECF No. 24-2 at 95, 82:10-83:21.)

Plaintiff also attempts to assert that an ambiguity exists as to which document governed her 2021 bonus payout- the GPP guide (ECF No. 24-2 at 48-62), or the GPP itself (ECF No. 24-2 at 64-72). The Offer Letter and the Release Agreement both explicitly refer to the Plan and "the terms of the Plan." (*See* ECF No. 24-2 at 29; 34.) The GPP Guide, which Plaintiff acknowledges she received, states on the first page, "This guide is a summary of the terms of the Plan. In the event of a conflict between the terms of this guide and the Plan document, the terms of the Plan document will prevail." (ECF No. 24-2 at 49.) Under the doctrine of incorporation by reference, Plaintiff was on notice as to the existence of the Plan document. *See Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) ("Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.").

Plaintiff's attempts to offer Emily Keyloun's testimony as evidence that the GPP Guide governs her bonus is unavailing. The question Keyloun was asked in her deposition was whether

13

there is a bonus plan *available to employees*, and she responded that the GPP Guide was available on Pfizer's internal network. (*See* ECF No. 24-2 at 129, 10:9-22.) This answer does not negate the possibility that another document governs that entire bonus plan. Additionally, Plaintiff has identified no caselaw that supports the principle that she must possess the document in order for it to govern, particularly given that despite the reference to the GPP in multiple documents available to Plaintiff, she never requested to read the GPP. (ECF No. 27 at 8.)

No ambiguity exists—the GPP governs Plaintiff's bonus program. The GPP states that in the event an employee is involuntarily terminated due to reorganization, as Plaintiff was, the "incentive award will be pro-rated based on [] actual days of GPP eligibility, [] Eligible Earnings and [the employee's] incentive target percentage or [] incentive target amount during the calendar year. The award payout will take into consideration, *at the Company's discretion*, individual performance during the plan year." (ECF No. 24-2 at 55 (emphasis added).) Plaintiff was paid a bonus consistent with this language. Plaintiff has identified no genuine dispute of material fact as to Pfizer's obligation regarding bonus payment under the contracts, nor has she convinced the Court that the question of which document govern is a genuine dispute of fact. For these reasons, summary judgment is granted as to the breach of contract claims.

### B. Pennsylvania Wage Payment and Collection Law and Delaware Wage Payment and Collection Act Claims

Plaintiff has brought claims pursuant to both the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. Ann. § 260.2a ("PA WPCL"), and the Delaware Wage Payment and Collection Act ("DE WPCA") (collectively, "the Wage claims"). (ECF No. 1-1 ¶¶ 39-51, 56-68.) Under both laws, bonuses are treated as wages. *See Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013); *Seitz v. Siegfried Grp.*, 2001 Del. Super. LEXIS 364, at *14 (Super.

Ct. Oct. 2, 2001), and Plaintiff has alleged that she was not paid the wages—in the form of the 2001 bonus—she was owed.

### i. Plaintiff's Pennsylvania Wage Payment and Collection Law Claim is Proper

Before evaluating the merits of the wage claims, the Court must address a threshold choice of law issue. Pfizer asserts that the Plaintiff's wage claims are governed by New York law, because the bonus falls within the purview of the GPP. (ECF No. 24-1 at 25-26.) Defendant also argues that Plaintiff has failed to raise a claim under a relevant New York statute. (*Id.*) It is true that the GPP is governed by New York law. (*See* ECF No. 24-2 at 70, § 13 ("The provisions of the Plan shall be construed, regulated and administered according to the laws of the State of New York without giving effect to principles of conflicts of law, except to the extent superseded by any controlling Federal statute.").) However, Plaintiff correctly notes that the PA WPCL states that "No provision of this act shall in any way be contravened or set aside by a private agreement." (ECF No. 25-1 at 17 (citing 43 Pa. Stat. Ann. § 260.7).) The Court must therefore determine whether the choice of law provision in the GPP contravenes the PA WPCL.

"Any analysis of the validity of a choice of law clause must begin with the presumption that such a contractual provision is enforceable." *Banks v. ManpowerGroup, Inc.*, No. 4:14-CV-02483, 2015 WL 4207236, at *2 (M.D. Pa. July 10, 2015) (citing *McIlvaine Trucking, Inc. v. W.C.A.B. (States)*, 810 A.2d 1280 (Pa. 2002). In this case, the Court has already found that the GPP was validly incorporated by reference into Plaintiff's Offer Letter and Release Agreement, and therefore its terms are valid contractual provisions.

Nonetheless, the Pennsylvania Supreme Court has stated that "[choice of law] agreements may be avoided where . . . their terms offend public policy." *McIlvaine Trucking, Inc.*, 810 A.2d

15

at 1286. The court in *Banks* conducted a thorough analysis of the Pennsylvania legislature's intent in enacting that PA WPCL, and found:

> The WPCL was 'promulgated to afford additional means to "an employee, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages"'. . . . The Pennsylvania legislature's intent and purpose in passing the WPCL was, *inter alia,* 'to provide an employee with a statutory remedy for an employer's *breach of its contractual obligation* to remit wages.' . . . The legislature plainly evidenced a prohibition on individuals or entities contracting around the WPCL when it declared that '[n]o provision of this act shall in any way be contravened or set aside by a private agreement.' (citing 43 P.S. § 260.7) . . .  In sum, the Pennsylvania legislature has . . . 'explicitly proscribe[d] waiver of the benefits of the' WPCL.

*Banks*, 2015 WL 4207236, at *2-3 (internal citations omitted). Adopting this reasoning, this Court finds that the PA WPCL applies, and Wagner's PA WPCL is appropriately asserted.

### ii. Plaintiff's Claim Fails Under the Pennsylvania Wage Payment and Collection Law

Having determined that Wagner may bring a claim under the PA WPCL, the Court must now determine whether her claim is meritorious. Defendants argue that Plaintiff fails to establish she is owed additional wages under the PA WPCL because she has provided no evidence for her claim that she was entitled to 200% of her target incentive percentage in 2021, or that the bonus payments were considered "wages" in connection with her employment. (ECF No. 24-1 at 28.) Defendants assert that "the uncontroverted evidence demonstrates that there is no contractual obligation for Pfizer to pay the amount in dispute, and, therefore, Plaintiff cannot succeed on her PWPCL claim." (*Id.*)

Plaintiff responds that she has established her PA WPCL claim, because "bonuses are 'wages' within the WPCL," and she has established she was entitled to additional bonus payments which she did not receive. (ECF No. 25-1 at 15-16.) Plaintiff refers back to the evidence asserted

16

in her breach of contract claims in support of the argument that she was entitled to 200% of her target incentive. (*Id.* at 16.)

The PA WPCL provides a remedy for employees to recover unpaid wages—including, in some instances bonuses. 43 Pa. Stat. Ann. § 260.9a(b). The PA WPCL "does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement." *Hartman v. Baker*, 766 A.2d 347, 352 (Pa. Super. Ct. 2000). In order to successfully assert a claim for unpaid wages, an employee must prove that she was contractually entitled to those wages. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).

In this instance, *Stillman v. Temple University Health System* is instructive. 2017 Pa. Super. Unpub. LEXIS 392 (Pa. Super. Jan. 31, 2017). There, as in this case, an employee argued she was entitled under the PA WPCL to be paid a bonus for which she was "eligible for a performance based bonus of up to 15% of [her] salary." *Id.* at *12. The trial court granted Temple summary judgment, finding that the plaintiff had not proved that this discretionary bonus constituted mandatory wages under the PA WPCL. *Id.* The Superior Court affirmed the trial court's grant of summary judgment, noting that "Appellant misconstrues the phrase 'eligible' to mean 'mandatory.'" *Id.* at *13.

In support of her PA WPCL claim, Plaintiff relies on the same evidence she presented in support of her breach of contract claim. (ECF No. 25-1 at 16.) This Court has already found that Wagner has failed to offer any evidence that the GPP, under which she was eligible to earn between 0-200% of her target incentive, entitled her to any specific bonus amount. *See supra*, III.A.iv. Plaintiff herself testified that she understood that Pfizer had discretion to pay her a bonus of

17

anywhere from zero to 200% of her target. (ECF No. 24-2 at 82, 32:10-33:8.)) Thus, she has failed to show a genuine dispute of fact as to the question of whether the GPP bonus constituted mandatory wages to which she was contractually entitled. Thus, seeing as there is no genuine dispute of fact, summary judgment is granted as to her PA WPCL claim.

### iii. Delaware Law Does Not Apply

Defendants also assert that under the statutory text of the DE WPCA, Plaintiff cannot bring a claim pursuant to that law. (ECF No. 24-1 at 28.) "The [Delaware] Wage Act was enacted by the General Assembly to provide for payment of wages and to enforce their collection." *Rypac Packaging Mach. Inc. v. Coakley*, No. CIV. A. 16069, 2000 WL 567895, at *13 (Del. Ch. May 1, 2000). The DE WCPA defines an employee as "a person suffered or permitted to work by an employer in this State." 19 Del. C. 1101(a)(4). Delaware courts have held that in order to bring a claim under the DE WPCA, an employee must have actually worked—wholly or partly—within the state of Delaware. *See Klig v. Deloitte LLP*, 36 A.3d 785, 797 (Ch. Del. 2011) (granting summary judgment in defendants' favor when a plaintiff that worked entirely out of defendants' New York office asserted a claim under the DWPCA, and noting "Delaware can readily regulate within its borders, but cannot regulate the wages of an individual working in another state, outside of Delaware's jurisdiction."); *Blood v. Columbus, US, Inc.*, No. CV N16C-12-101 MMJ, 2017 WL 3432773, at *2 (Del. Super. Ct. Aug. 10, 2017) (granting summary judgment to defendant in connection with plaintiff's DWPCA claim when it was undisputed that plaintiff worked in Maryland, not Delaware.)

It is not enough for an employment contract to simply be governed by Delaware law. *See Pestell v. CytoDyn Inc.*, No. 1:19-CV-01563-RGA, 2020 WL 3128270, at *2 (D. Del. June 12, 2020) ("Plaintiff cannot properly state a claim under the Delaware statute because he was never

employed in Delaware and the agreement was not made in Delaware."). The parties in this case have stipulated to the fact that Plaintiff was employed in Pennsylvania throughout the entirety of her employment with Pfizer. (ECF No. 24-2 ¶ 29.) The Plaintiff never worked in the state of Delaware.

Plaintiff responds to Defendant's argument by contending that "it is unclear how, even though Plaintiff did not work in New York, she should be governed by the New York CSL Labor Law." (ECF No. 25-1 at 17.) This argument ignores the clear Delaware caselaw cited by Defendant requiring an employee to actually work in Delaware to bring a DE WCPA claim. Plaintiff has cited no support for her implicit argument that an employee must work within New York to bring claims under the New York Labor Law.

Because Plaintiff did not work in Delaware, as required to bring a claim under the DE WCPA, her DE WCPA claim fails as a matter of law. Summary judgment is thereby granted on that claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted as to all of Plaintiff's claims. An appropriate order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
_____
**HODGE, KELLEY B., J.**